# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

Case No.: **07-61378**

CIV - COOKE

NORMAN GOLAUB and
UNA GOLAUB,

MAGISTRATE JUDGE
BROWN

Plaintiffs,

vs.

COUNTRYWIDE HOME LOANS, INC.,

FILED by _____ D.C.
INTAKE

SEP 26 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • FT. LAUD.

Defendant.

_____/

## DEFENDANT'S NOTICE OF REMOVAL

### I. INTRODUCTION

Defendant Countrywide[1] hereby removes the action pending in the Circuit Court for the 17th Judicial Circuit, Broward County, Florida under case number 07-020888. The Circuit Court for the 17th Judicial Circuit, Broward County, Florida is within the territorial jurisdiction of the Southern District of Florida.

Removal is based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. The complaint purports to assert claims for breach of contract, fraud in the inducement, fraudulent representation, and rescission. Diversity of citizenship amongst the parties and the amount in controversy are clear from the face of the complaint.

The Golaubs filed this lawsuit on August 23, 2007, and Countrywide was served with process on August 29, 2007, so removal is timely under 28 U.S.C. § 1446(b).

_____

[1] "Countrywide" is an abbreviation of the name of our client, Countrywide Home Loans, Inc.

{FT426120;1}

## II. PROCEDURAL COMPLIANCE

Copies of the process, pleadings, orders, and other papers or exhibits of every kind on file with the state court, including the summons and complaint, are attached as **COMPOSITE EXHIBIT A** in compliance with 28 U.S.C. § 1446(a).  The appropriate filing fee has been paid to the Clerk of Court upon filing of this notice.

Countrywide has served upon plaintiffs a notice of filing notice of removal as required by 28 U.S.C. § 1446(d), a copy of which (without exhibits) is attached as **EXHIBIT B**.  The original of that notice, with exhibits, is being filed with the Clerk of the 17th Judicial Circuit, Broward County, Florida, as required by 28 U.S.C. § 1446(d).

The amount in controversy in this litigation exceeds the jurisdictional limit of $75,000, exclusive of interest and costs, required under 28 U.S.C. § 1332(a).  This is shown by the money damages requested in the complaint and the Affidavit of Javier Jaraba (attached as **EXHIBIT C**) establishing the value of the equitable relief sought.

The Golaubs jointly request relief including damages plus rescission or cancellation of their "transaction documents" with Countrywide, including a $289,000 mortgage.  (Compl. pp. 11-12; *see also* Compl., Composite Exhibit 3.)  As the Jaraba Affidavit makes clear, the present value to the Golaubs of the cancellation of their mortgage loan, should the Court grant such relief, would exceed $280,000.  (Jaraba Aff., ¶¶ 6-7.)  This figure, in addition to the Golaubs' alleged monetary damages, confirms the amount in controversy is clearly in excess of $75,000 exclusive of interest and costs.  Pursuant to 28 U.S.C. § 1446(a), the grounds for removal are set forth below.

### III. GROUNDS FOR REMOVAL

Countrywide is not a citizen of Florida. Countrywide is a New York corporation with its principal place of business located at Calabasas, California. (Jaraba Aff., ¶ 3; *see also* Compl. ¶ 3.) The complaint shows the plaintiffs are citizens of Broward County, Florida. (Compl., ¶¶ 1, 5.) There is complete diversity of citizenship because this is an action between citizens of different states. *See* 28 U.S.C. § 1332(a)(1).

The complaint and the Jaraba Affidavit establish, by a preponderance of the evidence, facts showing the amount in controversy is well in excess of $75,000, exclusive of interest and attorneys' fees. *See Williams v. Best Buy, Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). The Golaubs' complaint and the HUD-1 settlement statement they attach to it confirm they seek rescission of their $289,000 mortgage loan. (*See* Compl., pp. 11-12, and Composite Ex. 3.) The mortgage loan they seek to rescind has a present principal balance in excess of $280,000. (Jaraba Aff., ¶¶6-7.)

Diversity of citizenship of the parties has been established. And, it is clear that plaintiffs seek relief with a value exceeding $75,000, exclusive of interest and attorney's fees. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332, and removal is appropriate pursuant to 28 U.S.C. § 1441(b).

3

## IV. CONCLUSION

This matter falls within the Court's jurisdiction because there is diversity of citizenship and the amount in controversy is in excess of $75,000. Removal is timely because the case is less than one year old and Countrywide was served not more than 30 days ago. Countrywide therefore respectfully requests this Court exercise subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1332 and 1441(b).

Respectfully submitted,

William P. Heller, Florida Bar No. 987263
e-mail: william.heller@akerman.com
Kimberly A. Leary, Florida Bar No. 0596051
e-mail: kimberly.leary@akerman.com
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
954-759-8945(ph)/954-463-2224 (fax)

and

Jeffrey A. Trinz, Florida Bar No. 0265683
e-mail: jeffrey.trinz@akerman.com
**AKERMAN SENTERFITT**
One Southeast Third Avenue, 25th Floor
Miami, Florida  33131-1714
305-374-5600(ph)/305-374-5095(fax)
*Counsel for Countrywide Home Loans, Inc.*

### CERTIFICATE OF SERVICE

*I hereby certify* that, on this 26th day of September, 2007, I filed the foregoing document with the Clerk of the Court, and served on the same date a true copy of the foregoing document on all counsel of record identified on the attached Service list. Such service was made via U.S. Mail.

Kimberly A. Leary

4

## SERVICE LIST

*NORMAN GOLAUB AND UNA GOLAUB V. COUNTRYWIDE HOME LOANS, INC.*
CASE NO.: _____ _____/_____

James S. Caris, Esq.
email:  jamescaris@yahoo.com
401 East Las Olas Blvd., #130-117
Fort Lauderdale, Florida 33301
(954) 920-9526 (phone)
(954) 523-0198 (fax)
**Attorney for Plaintiffs – served via U.S. Mail**

William P. Heller
e-mail:  william.heller@akerman.com
Kimberly A. Leary
e-mail:  kimberly.leary@akerman.com
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
(954) 759-8945(phone)
(954) 463-2224 (fax)

and

Jeffrey A. Trinz
e-mail:  jeffrey.trinz@akerman.com
**AKERMAN SENTERFITT**
One Southeast Third Avenue, 25th Floor
Miami, Florida   33131-1714
(305) 374-5600(phone)
(305) 374-5095(fax)
**Attorney for Defendant**
**Countrywide Home Loans, Inc.**

# COMPOSITE EXHIBIT A

## FORM 1.997   CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace no supplement the filing and service of pleadings or other papers as required by law.  This form is required for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075.

1) **Case Style**

Name of Court   IN THE CIRCUIT COURT OF THE     JUDICIAL
CIRCUIT, IN AND FOR     COUNTY, FLORIDA.

CASE NUMBER: _____

Plaintiff: _NORMAN GELAWB et_                 07020888
_UNA GELAWB_

-vs-
                                            **05**
Defendant: _COUNTRY CLUB ACME_
_CLAIS, INC_

2) **Type of Case** (Place an X in one box only.  If the case fits more than one type of case, select the most definitive description.

| DOMESTIC RELATIONS | TORTS | OTHER CIVIL |
|---|---|---|
| □ Simplified Dissolution | □ Professional Malpractice | ☑ Contracts |
| □ Dissolution | □ Products Liability | □ Condominium |
| □ Support IV-D | □ Auto Negligence | □ Real Property / Mortgage foreclosure |
| □ Support Non IV-D | □ Other Negligence | □ Eminent Domain |
| □ URESA    IV-D | FRAUD IN THE 1GRM | □ Other |
| □ URESA    Non IV-D | foreclosure Process | Rescission |
| □ Domestic Violence | | |
| □ Other Domestic Relations | | |

3) **Is Jury Trial Demand within Complaint?**     ☑ Yes   □ No
**Date:** _____
Signature of Attorney for party initiating action: _____
IT/civcov.sht   IT1   6/98



IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FL

CASE NO.

**NORMAN GOLAUB and
UNA GOLAUB**

      Plaintiff(s)



**COUNTRYWIDE HOME LOANS
INC., a foreign Corporation
doing business in the State of
Florida**
      **Defendant**

## COMPLAINT

Plaintiff,  NORMAN GOLAUB, hereinafter referred to as "BORROWER", and

UNA GOLAUB hereinafter referred to as "UNA" sue Defendant COUNTRYWIDE HOME

LOANS, INC, herein after referred to as "LENDER" and allege:

## PARTIES

1. At all times material hereto BORROWER is an individual married person and

owner of real property located in Broward County  Florida.

2. .UNA, is the wife of the BORROWER, and has acted as agent for him as well

acted on her own behalf, individually.

3. At all times material hereto the LENDER, is a corporation organized under the

Laws of the State of New York, and is registered with the Florida Department of  State, Division

of Corporations, as a Foreign Corporation for Profit doing business in the State of Florida.

1



## JURISDICTON AND VENUE

4. This is an action that exceeds ($15,000.00).

5. At all times material hereto, the BORROWER and UNA live and reside on real property owned by the BORROWER,  located at 4717 Adams Street, Hollywood,, Broward County Florida 33021. It is more particularly described as, Lot 4 and the West ½ of Lot 5, Block 209 of Hollywood Hills according to the Plat thereof, as recorded in Plat Book 6 at Page 22 of the Public Records of Broward County, Florida. Hereinafter referred to as "REAL PROPERTY."

6. At all times material hereto, the BORROWER and/or UNA applied, executed and signed all loan documents relevant to this cause of action, in Broward County, Florida.

7. As such the jurisdiction and venue is proper in the Circuit Court of Broward County, Florida

8. At all times material hereto, the LENDER acts as an originator, maker, provider and lender of monies to the general public at large. These loans are presented and sold to the general public at large in the form of mortgages.

9. LENDER is in the business of providing and making loans to the general public. It has established a number of loan  products. These loan products contain different variables regarding the terms of  repayment. These variables include, interest rates charges, repayment charges, penalties, etc., all of which make up the loan terms.

10. The written evidence of the loan debt is a promissory note executed by a borrower. In order to secure repayment of monies due under the promissory note, the LENDER requires the execution of a mortgage instrument that is placed and recorded against the real property of a the borrower.  Ergo, the real property mortgaged acts as collateral for repayment of

2

monies due under the promissory note. In the event of a default under the promissory note the real property previously collateralized is foreclosed upon by LENDER.

## COMMON FACTS

11. On or about the middle of November 2006, the LENDER forwarded to BORROWER through the U.S. Mail, a Flyer containing a solicitation for an offer to refinance his existing mortgage on the REAL PROPERTY. This flyer offered a loan application process available by telephone or applying online through computer.

12. Upon information and belief, the BORROWER understands that he was solicited because LENDER was now in direct privity with BORROWER. On or about February 2006, the LENDER had purchased the BORROWER'S then existing mortgage through an assignment of mortgage. This LENDER then became the owner of the mortgage that it was soliciting the BORROWER to refinance.

13. In response to the solicitation, in early December 2006, UNA acting on behalf and for the BORROWER and at times for herself individually,  proceeded to make a loan application in the amount of ($286,000.00) to LENDER through computer using the internet.

14. In response to this application, the LENDER'S representative, Peter Blancardt, hereinafter referred to "BLANCARDT," called UNA. He explained that based upon the information received, the LENDER could be of considerable assistance in providing refinancing.

15. BLANCARDT stated to UNA, that the LENDER was offering a new mortgage at the same exact interest rate in amount that would allow BORROWER to payoff the existing mortgage (now owned by LENDER).

3

16.  BLANCARDT further stated to UNA, that the new mortgage, after deducting all closing costs, (which he estimated would be $6,000.00), would leave the "BORROWER" approximately ($25,000.00) dollars cash after the closing was completed..

17.  These terms were agreeable to the BORROWER. BLANCARDT stated he would deliver the proposed loan package directly to BORROWER"S home..

18.  When BORROWER received the proposed loan package, it did not contain the estimated ($6,000.00) in closing costs. It listed approximately ($14,000.00) in closing costs associated with making the new mortgage loan. The difference being primarily loan origination fees payable to the LENDER.

19.  Upon receiving the proposed LOAN package, UNA immediately telephoned LENDER to cancel the application. She was referred to another loan officer, as BLANCARDT, was on vacation. Upon UNA'S protest of the highly inflated closing costs, LENDER'S representative stated that it was a mistake and a new corrected loan package would be forwarded to the BORROWER immediately.

20.  On Tuesday, January 9, 2007, a second loan package arrived at the LENDER'S home. After reviewing and examining its contents the BORROWER found the terms and conditions acceptable.

21.  On Thursday, January 11, 2007, a Settlement Agent chosen by the LENDER (SERVICE LINK) hereinafter referred to as "SERVICE" came to the BORROWER'S home to conduct the closing. The BORROWER proceeded to execute all documents that were part of the  loan package. UNA, was also required to execute the mortgage and various other loan document as she is the BORROWER'S wife. UNA was not required to execute the promissory

4

note.

22. Contained within the loan package was a US Department of Housing and Urban Development Settlement Statement, otherwise known as a "HUD-1." The HUD 1 is a Federal Form furnished by the LENDER, to give a borrower a statement of the actual settlement costs associated with making and closing the loan. It also discloses on line 303 a listing of the actual cash to be paid Borrower after deducting all closing costs and expenses associated with making the loan.

23. The HUD-1, as prepared by the LENDER, obligated LENDER to pay ($26,098.13) cash to out of the refinancing to BORROWER. This figure was consistent with the previous oral representations and promises made by the LENDER to BORROWER. Both BORROWER and UNA executed the HUD-1 Statement along with all the other loan documents. **(BORROWER'S Composite Exhibit One)**

24. On or about January 22, 2007 instead of receiving a check for the scheduled ($26,098.13), the check delivered to the BORROWER was for ($12,309.79). Shorting the BORROWER ($13,788.34). **(BORROWER'S Composite Exhibit Two)**

25. Upon receipt of the erroneous check amount, UNA immediately contacted the LENDER. UNA informed the LENDER, that the monies were substantially short of the cash amount promised and owed by the LENDER. She also informed the LENDER, that check tendered stood in contradiction of the very loan documents prepared by LENDER.

26. UNA made several more phone calls requesting that the LENDER forward the additional monies owed. The LENDER steadfastly refused.

27. BORROWER, then demanded the entire financial agreement be cancelled

5

and the new mortgage and promissory note be voided. The LENDER again refused.

28. In response to the demand by UNA to pay the additional monies owed, the LENDER acting unilaterally prepared a revised HUD-1 and had delivered to BORROWER. The revised HUD-1, reduced cash amount due to the BORROWER and corresponded exactly to the amount of the check tendered previously. This was accomplished by LENDER adjusting and inflating the payoff to the then existing mortgage (which it had recently purchased). The payoff was adjusted upward from $258,107.30 to $270,169.61. **(BORROWER'S Composite Exhibit Three)**

29. BORROWER and UNA refused to sign the revised HUD-1 statement. Further the BORROWER never negotiated the check containing the shortage. BORROWER is still in possession of the original check. **(See BORROWER'S  Exhibit Two)**

30. All conditions necessary to bringing and maintaining this cause action have occurred or been performed, or have been waived, prior to filing this lawsuit.

## COUNT I-BREACH OF CONTRACT BY LENDER

BORROWER sues LENDER, for Breach of Contract and in support thereof states as follows:

31. BORROWER, restates and re-alleges paragraphs 1 through 30, as if fully set forth herein.

32. LENDER made oral promises and written representations to BORROWER or his agent wife UNA, to refinance BORROWER'S REAL PROPERTY by giving him a new mortgage, that would provide cash payable to BORROWER of approximately ($26,098.13). BORROWER and UNA accepted, agreed and acted upon those terms. **(See BORROWER'S**

6

**Composite Exhibit One)**

33. LENDER did in fact materially breach the agreement by delivering to the BORROWER, monies of only ($12,309.79) (See **BORROWER'S Exhibit Two**)

34. BORROWER, has suffered damages as a result of the LENDER'S material breach of contract.

35. BORROWER has retained the services of JAMES S. CARIS, P.A. to represent him in this action and is required to pay it a reasonable fees for their services.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter a judgment for damages, attorneys fees, costs, interest and such other and further relief that this court deems just and proper.

## COUNT-II-FRAUD IN THE INDUCEMENT BY LENDER

BORROWER sues LENDER for Fraud In the Inducement and states as follows:

36. BORROWER, restates and re-alleges paragraphs 1 through 30 as if fully set forth in this Count.

37. LENDER, made oral misrepresentations to the BORROWER, or his agent wife UNA, that he would receive approximately ($25,000.00) cash back, if he agreed to allow LENDER to refinance his REAL PROPERTY.

38. LENDER, continued with these same factual misrepresentations in written form by preparing, delivering and having the BORROWER execute written loan documents listing and detailing that he was to receive ($26,098.13) back, after deducting all closing costs. (See, **BORROWER'S Composite Exhibit One)**

7

39. Based upon these oral and written representations, BORROWER and UNA did in fact sign the loan documentation presented by the LENDER.

40. LENDER delivered a cash payout to BORROWER of only ($12,309.79). BORROWER. LENDER knew or should have known of the falsity of these misrepresentations. **(See, BORROWER'S Composite Exhibit Two)**

41. LENDER knew at the time it made these false financial representations, that it would induce the BORROWER and UNA to act upon them and execute the loan documents.

42. BORROWER was in fact induced and did justifiably rely and act upon LENDER'S factual misrepresentations.

43. BORROWER did in fact suffer damages in the justifiable reliance and actions taken based on the factual misrepresentations made by LENDER.

44. BORROWER has retained the services of JAMES S. CARIS, P.A. to represent him in this action and is required to pay it a reasonable fees for their services.

**WHEREFORE** BORROWER, demands judgment against LENDER for damages, interest, costs, attorneys fees and any other relief this court deems appropriate under the circumstances of this case.

The BORROWER hereby reserve the right to seek punitive damages against LENDER upon satisfaction of the applicable Florida Statutory criteria.

## COUNT III-FRAUDULENT MISREPRESENTATION BY LENDER

BORROWER sues LENDER for Fraudulent Misrepresentation and states as follows:

8

45.   BORROWER, restates and re-alleges paragraphs 1 through 30 as if fully set forth in this Count and further state.

46.   LENDER, made oral and written misrepresentations of material facts to the BORROWER, and/or his agent wife UNA,  prior to them entering into and granting a mortgage on his home.

47.   LENDER, made oral misrepresentations of fact, that BORROWER would be left in excess of Twenty-Five Thousand dollars ($25,000.00) cash after deducting closing costs,  if he refinanced his REAL ESTATE  with LENDER.

48.   LENDER, continued with these same factual misrepresentations by preparing, submitting and having the BORROWER and UNA execute loan package documents that listed and obligated LENDER to provide BORROWER ($26,098.13) cash out, from the refinancing of his REAL PROPERTY (See **BORROWER'S Composite Exhibit One**)

49. Based upon and relying upon these false misrepresentations BORROWER and UNA did in fact refinance with the LENDER.

50.   LENDER in fact delivered a cash payout to BORROWER of only ($12,309.79). The LENDER  knew that at the time it made the oral and written representations to the BORROWER and UNA, that they were false.(See **BORROWER'S Exhibit Two**)

51.   LENDER knew at the time it made the false factual representations, that it would induce the BORROWER and UNA to act upon them.

52.   BORROWER and UNA did in fact justifiably rely and act upon LENDER'S financial misrepresentations.

53.   BORROWER and UNA have in fact suffered damages when he

9

justifiably relied upon the factual misrepresentations of the LENDER.

54. BORROWER has retained the services of JAMES S. CARIS, P.A. to represent him in this action and is required to pay it a reasonable fees for its services.

**WHEREFORE** BORROWER, demands judgment against LENDER for damages, interest, costs, attorneys fees and any other relief this court deems appropriate under the circumstances of this case.

The BORROWER hereby reserve the right to seek punitive damages against LENDER upon satisfaction of the applicable Florida Statutory criteria.

## COUNT IV-RESCISSION

BORROWER and UNA file this action for Rescission against LENDER and state as follows:

55. BORROWER and UNA, restate and re-allege paragraphs1 through 31 as if fully set forth in this Count and further state.

56. BORROWER and UNA file this Count against the LENDER, seeking Rescission of the Contract, Mortgage and Promissory Note, they entered into with LENDER.

57. On or about January 11, 2007 BORROWER and UNA executed a first mortgage in favor of LENDER. LENDER recorded said mortgage against the BORROWER'S REAL PROPERTY on January 19, 2007. **(BORROWER'S Composite Exhibit Four and Composite Exhibit Five)**

58. This mortgage was executed and recorded pursuant to the contract entered into between BORROWER, UNA and LENDER.

59. LENDER, breached said contract by failing to pay the BORROWER the

10

amount it had agreed to.

60. LENDER, did fraudulently misrepresent and induce BORROWER and UNA, to enter into a mortgage and promissory note in exchange for which, the BORROWER would provide refinancing of their allowing them to take cash from the settlement closing of ($26,098.13).

61. LENDER, never delivered the amount of money it had represented it would. In fact only LENDER paid BORROWER only ($12,309.79).

62. BORROWER and/or UNA informed the LENDER several times, that they had rescinded and cancelled the contract, mortgage and promissory note (hereinafter when collectively referenced, they are referred to as "transaction documents")due to LENDER'S fraudulent misrepresentations.

63. BORROWER and UNA never received any benefits from this mortgage refinance transaction. and in fact been left in an inferior financial position as compared to the time prior to executing the mortgage refinance.

64. BORROWER and UNA have no adequate remedy at law to cancel, terminate and remove the recorded mortgage from their REAL PROPERTY. They also have no adequate remedy at law to terminate the promissory note and contract.

65. BORROWER has retained the services of JAMES S. CARIS, P.A. to represent him in this action and is required to pay it a reasonable fees for their services.

**WHEREFORE,** Plaintiff (s) respectfully request a judgment against Defendant as follows: (a) For a declaration that the transaction documents between Plaintiff and Defendant(s) are void and of no force and effect; (b) For a determination and order that the

transactions documents between Plaintiff(s) and Defendant are rescinded ( c) For restoration of any and other benefits which have been conferred by Plaintiff(s) upon Defendant and which Defendant did unjustly obtained and retained (d) For an order awarding Plaintiff(s) their attorney fees and costs (e) For such other and further relief as the court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

BORROWER hereby makes demand for trial by jury as to all issues contained in this Complaint that Plaintiff is permitted by law to be tried before a jury.

JAMES S. CARIS, P.A.

JAMES S. CARIS, ESQ.
401 E. LAS OLAS BLVD.
#130-117
FORT LAUDERDALE, FL 33301
954-920-9526
FLA BAR NO. 382213

12

US Department of Housing and Urban Development

**A. Settlement Statement**                                                      OMB No. 2502-0265

**B. Type of Loan**

PAGE: 1 OF 2

| 1 __ FHA  2 __ FmHA  3 __ Conv. Unins | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|
| 4 __ VA  5 _X_ Conv. Ins | 1318/38-01 | 155210912 | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p o c)" were paid outside of closing, they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

| D. NAME OF BORROWER:<br>ADDRESS: | NORMAN BOLAUR<br>4717 ADAMS ST, HOLLYWOOD, Fl 33021-7010 |
|---|---|
| E. NAME OF SELLER:<br>ADDRESS: | REFINANCE |
| F. NAME OF LENDER:<br>ADDRESS: | COUNTRYWIDE FULL SPECTRUM LENDING DIVISION<br>5805 SEPULVEDA BLVD, REGION 890, VAN NUYS, CA 91411 |
| G. PROPERTY ADDRESS: | 4717 ADAMS ST, HOLLYWOOD, FL 33021-7010 |
| H. SETTLEMENT AGENT: | SERVICE LINK |
| PLACE OF SETTLEMENT: | ANN-MARIE BOWEN - 19477 NE 10TH AVENUE  Apt #419, MIAMI, FL 33179 |
| I. SETTLEMENT DATE: 01/11/2007 | DISBURSEMENT DATE: 01/16/2007 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. CONTRACT SALES PRICE | | 401. CONTRACT SALES PRICE | |
| 102. PERSONAL PROPERTY | | 402. PERSONAL PROPERTY | |
| 103. SETTLEMENT CHARGES TO BORROWER (LINE 1400) | $6,716.49 | 403. | |
| 104. PAYOFF TO COUNTRYWIDE | $256,187.39 | 404. | |
| 105. | | 405. | |
| **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE** | | **ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE** | |
| 106. | | 406. | |
| 107. | | 407. | |
| 108. | | 408. | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | $262,903.87 | **420. GROSS AMOUNT DUE TO SELLER** | $0.00 |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. DEPOSIT OR EARNEST MONEY | | 501. EXCESS DEPOSIT (SEE INSTRUCTIONS) | |
| 202. PRINCIPAL AMOUNT OF NEW LOANS | $209,000.00 | 502. SETTLEMENT CHARGES TO SELLER (LINE 1400) | |
| 203. EXISTING LOAN(S) TAKEN SUBJECT TO | | 503. EXISTING LOAN(S) TAKEN SUBJECT TO | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER** | | **ADJUSTMENTS FOR ITEMS UNPAID BY SELLER** | |
| 210. | | 510. | |
| 211. | | 511. | |
| 212. | | 512. | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | $209,000.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | $0.00 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT FROM OR TO SELLER** | |
| 301. GROSS AMOUNT DUE FROM BORROWER (LINE 120) | $262,903.87 | 601. GROSS AMOUNT DUE TO SELLER (LINE 420) | $0.00 |
| 302. LESS AMOUNTS PAID BY/FOR BORROWER (LINE 220) | $209,000.00 | 602. LESS REDUCTION AMOUNT DUE SELLER (LINE 520) | $0.00 |
| 303. CASH TO BORROWER | $26,096.13 | 603. CASH TO SELLER | $0.00 |

# LENDERS COMPOSITE EXHIBIT ONE

REV. HUD-1 (3/86)

US Department of Housing and Urban Development

SETTLEMENT STATEMENT     FILE NUMBER: 1315736-01

OMB No. 2502-0265

PAGE 2 OF 2

| L. SETTLEMENT CHARGES | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION BASED ON PRICE | | |
| DIVISION OF COMMISSION (LINE 700) AS FOLLOWS. | | |
| 701 | | |
| 702 | | |
| 703 | | |
| 704. COMMISSION PAID AT SETTLEMENT | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | |
| 801. LOAN ORIGINATION FEE | | |
| 802. LOAN DISCOUNT - 0.1250% - COUNTRYWIDE FULL SPECTRUM LENDING DIVISION | $361.25 | |
| 803. APPRAISAL FEE | | |
| 804. CREDIT REPORT TO LANDSAFE CREDIT | $35.00 | |
| 805. LENDER'S INSPECTION FEE | | |
| 806. MORTGAGE APPLICATION FEE | | |
| 807. FLOOD CERTIFICATION FEE TO LANDSAFE FLOOD | $26.00 | |
| 808. DOC PREP FEE TO COUNTRYWIDE FULL SPECTRUM LENDING DIVISION | $100.00 | |
| 810. TAX SERVICE FEE TO COUNTRYWIDE TAX SERVICE | $70.00 | |
| 811. PROCESSING FEE TO COUNTRYWIDE FULL SPECTRUM LENDING DIVISION | $775.00 | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | |
| 901. INTEREST FROM 01/15/2007 TO 02/01/2007 @$58.3900/DAY FOR 16 DAYS | $934.24 | |
| 902. MORTGAGE INSURANCE PREMIUM FOR | | |
| 903. HAZARD INSURANCE PREMIUM FOR | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | |
| 1001. HAZARD INSURANCE | | |
| 1002. MORTGAGE INSURANCE | | |
| 1003. CITY PROPERTY TAXES | | |
| 1004. COUNTY PROPERTY TAXES | | |
| 1005. SCHOOL TAXES | | |
| 1009. AGGREGATE ANALYSIS ADJUSTMENT | $0.00 | $0.00 |
| 1100. TITLE CHARGES | | |
| 1101. SETTLEMENT OR CLOSING FEE TO SERVICELINK | $475.00 | |
| 1102. ABSTRACT OR TITLE SEARCH TO SERVICELINK | $210.00 | |
| 1103. MORTGAGE UPDATE FEE | | |
| 1104. SIGNING FEE TO SERVICELINK | | |
| 1105. DOCUMENT PREPARATION | $150.00 | |
| 1106. NOTARY FEES | | |
| 1107. ATTORNEY'S FEES | | |
| 1108. TITLE INSURANCE TO SERVICELINK | | |
| 1109. LENDER'S POLICY $0.00 - $1,520.00 LOAN AMOUNT - $209,000.00 | $1,520.00 | |
| 1110. OWNER'S POLICY | | |
| 1111. ALTA 8.1 TO SERVICELINK | | |
| 1112. FL FORM 9 TO SERVICELINK | $25.00 | |
| 1113. DOCUMENT PROCESSING/DELIVERY TO SERVICELINK | $152.00 | |
| 1114. ALTA 6 TO SERVICELINK | $300.00 | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | $25.00 | |
| 1201. RECORDING FEES - MORTGAGE $188.50 | | |
| 1202. CITY/COUNTY TAX/STAMPS - MORTGAGE $570.00 | $188.50 | |
| 1203. STATE TAX/STAMPS - MORTGAGE $1,011.50 | $570.00 | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | $1,011.50 | |
| 1301 | | |
| 1400. TOTAL SETTLEMENT CHARGES | $6,718.49 | $0.00 |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement. I agree to further adjustments in the event of errors or omissions and indemnify and hold harmless Settlement Agent against such errors or omissions.

_____
NORMAN GOLAUB
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

_____
UNA GOLAUB

WARNING IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18 U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

By: _____
                            DATE

Countrywide Home Loans Servicing LP
PO Box 5012
Woodland Hills CA 91365-5012

NORMAN & UNA GOLAUB

4717 Adams St

Hollywood FL 33021

| eck no: | 8700426 | Treasury id: | 44125000 | Page: | 1 |
| te: | 02/01/2007 | Comp. No: | 1160 | | CFC@POA |
| eck amount: | 205.84 | Agency No: | 16142 | | =ESR |
| | | Escrow type: | 10 | | |
| eck payee: | NORMAN & UNA GOLAUB | Escrow desc: | A/C#116016142 ESCROW BAL REFUND | | |

| an no | Amount | Mortgagor | Reference |
| --- | --- | --- | --- |
| 6016142 | 205.84 | NORMAN & UNA GOLAUB | ESCROW BAL REFUND |

OTAL:        205.84                                      *NUMBER OF ACCOUNTS:        1



THIS CHECK IS VOID WITHOUT A GREEN BACKGROUND AND AN ATIFICIAL WATERMARK ON THE BACK - HOLD AT ANGLE TO VIEW

LENDERS EXHIBIT TWO

⑈0008 7004 26⑈⑈  ⑉0 31 100 209⑉⑈        3868 7899⑈⑈

US Department of Housing and Urban Development

**A. Settlement Statement**

**B. Type of Loan**

OMB No. 2502-0265

| 1. _ FHA  2. _ FmHA  3. _ Conv. Unins.<br>4. _ VA  5. X Conv. Ins. | 6. File Number<br>1315736-01 | 7. Loan Number<br>155218912 | 8. Mortgage Insurance Case Number |
|---|---|---|---|

PAGE 1 OF 2

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside of closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

**D. NAME OF BORROWER:** NORMAN GOLAUB
**ADDRESS:** 4717 ADAMS ST, HOLLYWOOD, FL 33021-7610

**E. NAME OF SELLER:** R E F I N A N C E
**ADDRESS:**

**F. NAME OF LENDER:** COUNTRYWIDE FULL SPECTRUM LENDING DIVISION
**ADDRESS:** 5805 SEPULVEDA BLVD, REGION 890, VAN NUYS, CA 91411

**G. PROPERTY ADDRESS:** 4717 ADAMS ST, HOLLYWOOD, FL 33021-7610

**H. SETTLEMENT AGENT:** SERVICE LINK
**PLACE OF SETTLEMENT:** ANN-MARIE BOWEN - 19477 NE 10TH AVENUE, Apt.#419, MIAMI, FL 33179

**I. SETTLEMENT DATE:** 01/11/2007

**DISBURSEMENT DATE:** 01/16/2007

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. CONTRACT SALES PRICE | | 401. CONTRACT SALES PRICE | |
| 102. PERSONAL PROPERTY | | 402. PERSONAL PROPERTY | |
| 103. SETTLEMENT CHARGES TO BORROWER (LINE 1400) | $6,520.60 | 403. | |
| 104. | | 404. | |
| 105. PAYOFF TO COUNTRYWIDE HOME LOANS - 116016142 | $270,169.61 | 405. | |
| ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE | | ADJUSTMENTS FOR ITEMS PAID BY SELLER IN ADVANCE | |
| 106. | | 406. | |
| 107. | | 407. | |
| 108. | | 408. | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | $276,690.21 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | $0.00 |
| 201. DEPOSIT OR EARNEST MONEY | | 501. EXCESS DEPOSIT (SEE INSTRUCTIONS) | |
| 202. PRINCIPAL AMOUNT OF NEW LOANS | $289,000.00 | 502. SETTLEMENT CHARGES TO SELLER (LINE 1400) | |
| 203. EXISTING LOAN(S) TAKEN SUBJECT TO | | 503. EXISTING LOAN(S) TAKEN SUBJECT TO | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| ADJUSTMENTS FOR ITEMS UNPAID BY SELLER | | ADJUSTMENTS FOR ITEMS UNPAID BY SELLER | |
| 210. | | 510. | |
| 211. | | 511. | |
| 212. | | 512. | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | $289,000.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | $0.00 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT FROM OR TO SELLER** | |
| 301. GROSS AMOUNT DUE FROM BORROWER (LINE 120) | $276,690.21 | 601. GROSS AMOUNT DUE TO SELLER (LINE 420) | $0.00 |
| 302. LESS AMOUNTS PAID BY/FOR BORROWER (LINE 220) | $289,000.00 | 602. LESS REDUCTION AMOUNT DUE SELLER (LINE 520) | $0.00 |
| 303. CASH TO BORROWER | $12,309.79 | 603. CASH TO SELLER | $0.00 |

LENDERS COMPOSITE EXHIBIT THREE

US Department of Housing and Urban Development

**...ENT STATEMENT**   FILE NUMBER: 1315736-01   OMB No. 2502-0265

PAGE 2 OF 2

| ...LEMENT CHARGES | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| TOTAL SALES/BROKER'S COMMISSION BASED ON PRICE | | |
| ...IVISION OF COMMISSION (LINE 700) AS FOLLOWS: | | |
| 701. | | |
| 702. | | |
| 703. | | |
| 704.   COMMISSION PAID AT SETTLEMENT | | |
| **800.   ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801.   LOAN ORIGINATION FEE | | |
| 802.   LOAN DISCOUNT - 0.1250% - COUNTRYWIDE FULL SPECTRUM LENDING DIVISION | $361.25 | |
| 803.   APPRAISAL FEE | | |
| 804.   CREDIT REPORT TO LANDSAFE CREDIT | $35.00 | |
| 805.   LENDER'S INSPECTION FEE | | |
| 806.   MORTGAGE APPLICATION FEE | | |
| 807.   FLOOD CERTIFICATION FEE TO LANDSAFE FLOOD | $26.00 | |
| 809.   DOC PREP FEE TO COUNTRYWIDE FULL SPECTRUM LENDING DIVISION | $100.00 | |
| 810.   TAX SERVICE FEE TO COUNTRYWIDE TAX SERVICE | $70.00 | |
| 811.   PROCESSING FEE TO COUNTRYWIDE FULL SPECTRUM LENDING DIVISION | $775.00 | |
| **900.   ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901.   INTEREST FROM 01/17/2007 TO 02/01/2007: $58.3900/DAY FOR 15 DAYS | $875.85 | |
| 902.   MORTGAGE INSURANCE PREMIUM FOR | | |
| 903.   HAZARD INSURANCE PREMIUM FOR | | |
| **1000.   RESERVES DEPOSITED WITH LENDER FOR** | | |
| 1001.   HAZARD INSURANCE | | |
| 1002.   MORTGAGE INSURANCE | | |
| 1003.   CITY PROPERTY TAXES | | |
| 1004.   COUNTY PROPERTY TAXES | | |
| 1005.   SCHOOL TAXES | | |
| 1009.   AGGREGATE ANALYSIS ADJUSTMENT | | |
| **1100.   TITLE CHARGES** | $0.00 | $0.00 |
| 1101.   SETTLEMENT OR CLOSING FEE TO SERVICELINK | | |
| 1102.   ABSTRACT OR TITLE SEARCH TO SERVICELINK | $475.00 | |
| 1103.   MORTGAGE UPDATE FEE | $210.00 | |
| 1104.   SIGNING FEE TO SERVICELINK | | |
| 1105.   DOCUMENT PREPARATION | $150.00 | |
| 1106.   NOTARY FEES | | |
| 1107.   ATTORNEY'S FEES | | |
| 1108.   TITLE INSURANCE TO SERVICELINK | | |
| 1109.   LENDER'S POLICY $0.00 - $1,520.00 LOAN AMOUNT - $289,000.00 | $1,520.00 | |
| 1110.   OWNER'S POLICY | | |
| 1111.   ALTA 8.1 TO SERVICELINK | | |
| 1112.   FL FORM 9 TO SERVICELINK | $25.00 | |
| 1113.   DOCUMENT PROCESSING/DELIVERY TO SERVICELINK POC BY COUNTRYWIDE FULL SPECTRUM LENDING DIVISION. $80.00 | $152.00 | |
| **1200.   GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201.   RECORDING FEES - MORTGAGE: $103.50 | | |
| 1202.   CITY/COUNTY TAX/STAMPS - MORTGAGE: $578.00 | $103.50 | |
| 1203.   STATE TAX/STAMPS - MORTGAGE: $1,011.50 | $578.00 | |
| 1204.   NOTICE OF TERMINATION TO AR SERVICELINK | $1,011.50 | |
| **1300.   ADDITIONAL SETTLEMENT CHARGES** | $52.50 | |
| 1301. | | |
| **1400.   TOTAL SETTLEMENT CHARGES** | $6,520.60 | $0.00 |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement. I agree to further adjustments in the event of errors or omissions and indemnify and hold harmless Settlement Agent against such errors or omissions

NORMAN GOLAUB
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

WARNING:IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18 U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

By: _____

DATE

CFN # 106761389,      43460 Page 1994, Page 1 of 12, Re     d 01/19/2007 at
02:06 PM, Broward County Commission, Doc M: $1011.50 Int. Tax $578.00 Deputy
Clerk ERECORD

RETURN TO:

Chicago Title 1315736
ServiceLink Division
4000 Industrial Blvd
Aliquippa, PA 15001      12

This document was prepared by:
VANA ISHKHANIAN

COUNTRYWIDE HOME LOANS, INC.

5805 SEPULVEDA BLVD, SUITE
400
VAN NUYS
CA 91411

——————————— [Space Above This Line For Recording Data] ———————————

00015521891201007
[Doc ID #]

## MORTGAGE

MIN 1000157-0007698286-3

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated JANUARY 10, 2007      , together
with all Riders to this document.
(B) "Borrower" is
NORMAN GOLAUB, AND UNA GOLAUB, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(E) "Note" means the promissory note signed by Borrower and dated JANUARY 10, 2007      . The
Note states that Borrower owes Lender
TWO HUNDRED EIGHTY NINE THOUSAND and 00/100

Dollars (U.S. $ 289,000.00      ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than FEBRUARY 01, 2037      .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 11

-6A(FL) (0005)     CHL (08/05)(d)     VMP Mortgage Solutions, Inc. (800)521-7291      Form 3010 1/01
CONV/VA




LENDERS COMPOSITE EXHIBIT FOUR

DOC ID #: 00015521891201007

(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider  ☐ Biweekly Payment Rider  ☐ Other(s) [specify]

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "**Escrow Items**" means those items that are described in Section 3.

(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500) as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

COUNTY                    of              BROWARD
[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

-6A(FL) (0005)         CHL (08/05)          Page 2 of 11                 Form 3010 1/01

USJ

**Exhibit "A"**
**Legal Description**

All that certain parcel of land situated in the County of Broward, State of Florida, being known and designated as Lot 4 and the West 1/2 of Lot 5, Block 209 of Hollywood Hills, according to the Plat thereof, as recorded in Plat Book 6 at Page 22 of the Public Records of Broward County, Florida.

Tax/Parcel ID: 11207-06-19300

1315736

DOC ID #: 00015521891201007
which currently has the address of

Parcel ID Number: 112070619300

4717 ADAMS ST, HOLLYWOOD
[Street/City]

Florida 33021-7610  ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

-6A(FL) (0005)          CHL (08/05)                    Page 3 of 11                          Form 3010 1/01

US 9

DOC ID #: 0001552189120100?

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

-4A(FL) (0005)      CHL (08/05)        Page 4 of 11        Form 3010 1/01

DOC ID #: 00015521891201007

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

-6A(FL) (0005)          CHL (08/05)          Page 5 of 11          Form 3010 1/01

US 9

DOC ID #: 0001552189120I007

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the

DOC ID #: 00015521891201667

amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

DOC ID #: 00015521891201007

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless

DOC ID #: 00015521891201007

Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to

CFN # 106761389, OR BK 43460 PG 2004, Page 11 of 12

DOC ID #: 00015521891201007

which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

CFN # 106761389, OR BK 43460 PG 2005, Page 12 of 12

DOC ID #: 0001552189120107

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____

_____   (Seal)
NORMAN GOLAUB                        -Borrower
4717 ADAMS ST
HOLLYWOOD, FL 33021-7610

_____   (Address)

_____   (Seal)
UNA GOLAUB                          -Borrower

_____   (Address)

_____   (Seal)
                                    -Borrower

_____   (Address)

_____   (Seal)
                                    -Borrower

_____   (Address)

STATE OF FLORIDA,              Broward              County ss:

The foregoing instrument was acknowledged before me this 11th day of January, 2007 by NORMAN GOLAUB and UNA GOLAUB (HUSBAND AND WIFE)

_____

_____

who is personally known to me or who has produced Florida Drivers License as identification

_____
Notary Public

ANN-MARIE NAPIER-BOWEN
MY COMMISSION # DD 450642
EXPIRES: July 14, 2009
Bonded Thru Notary Public Underwriters

P. 7/36

Prepared by: VANA ISHKHANIAN

JANUARY 11, 2007
[Date]

**NOTE**

HOLLYWOOD
[City]

LOAN #: 155218912

FLORIDA
[State]

4717 ADAMS ST, HOLLYWOOD, FL 33021 7610
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 289,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    7.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST          day of each month beginning on
MARCH 01, 2007          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled date and will be applied to interest before Principal. If, on   FEBRUARY 01, 2037          I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266 0694
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,996.05          .

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**FLORIDA FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

-5N(FL) (0005).01  CML (08/02)(d)          VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3

Form 3210 1/01





LENDERS COMPOSITE EXHIBIT FIVE

LOAN #: 155218912

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(F) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Karen Gillum          -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                 -Borrower

_____ (Seal)
                 -Borrower

*[Sign Original Only]*

-6N(FL) (0005).01  CHL (08/02)          Page 2 of 2          Form 3210  1/01

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL DISTRICT IN AND
FOR BROWARD COUNTY, FLORIDA

NORMAN GOLAUB and
UNA GOLAUB

CASE NO          07020588

CIVIL DIVISION

Plaintiff(s),

vs.

COUNTRYWIDE HOME LOANS
INC., a foreign Corporation doing
business in the State of Florida

**05**

Defendant.

Eric Larson
Cert. Process Server # 063
2nd Judicial Circuit

_____/

## CIVIL SUMMONS

TO: COUNTRYWIDE HOME LOANS, INC.
SERVE: REGISTERED AGENT: THE PRENTICE-HALL CORPORATION SYSTEM,
INC., 1201 HAYES STREET, SUITE 105, TALLAHASSEE, FLORIDA 32301

The Defendant is required to serve written defenses to the Complaint on the Plaintiff's attorneys.
**James S. Caris, P.A., 401 E. Las Olas Blvd., #130-117, Fort Lauderdale, FL 33301 954-920-
9526,** within 20 days after service of this Summons on the Defendant, exclusive of the day of
service, and file the original of the defenses with the Clerk of this Court either before service on
Plaintiff's attorney or immediately thereafter. If the Defendant fails to do so, a Default will be
entered against the Defendant for the relief demanded in the Complaint.

IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT OF 1990 (ADA), DISABLED PERSONS
WHO, BECAUSE OF THEIR DISABILITIES, NEED SPECIAL ACCOMODATION TO PARTICIAPATE IN THIS
PROCEEDING SHOULD CONTACT THE ADA COORDINATOR AT 201 S.E. 6TH STREET, ROOM 236, FORT
LAUDERDALE, FLORIDA 33301 OR TELEPHONE VOICE/TDD 954-357-6364 NOT LATER THAN FIVE
BUSINESS DAYS PRIOR TO SUCH PROCEEDING.

WITNESS my hand and the Seal of Said Court:

AUG 28 2007

(SEAL)

HOWARD C. FORMAN
As Clerk of the Court

By:

## RETURN OF SERVICE

**State of Florida**                    **County of Broward**                    **Circuit Court**

Case Number: 07-20888 CACE 05

Plaintiff:
**NORMAN GOLAUB AND UNA GOLAUB**
vs.
Defendant:
**COUNTRYWIDE HOME LOANS, INC.**

For:
James Caris
JAMES S. CARIS
401 East Las Olas Boulevard
#130-117
Fort Lauderdale, FL 33301

Received by CAPLAN AND CAPLAN PROCESS SERVICE on the 24th day of August, 2007 at 1:49 pm to be served on **COUNTRYWIDE HOME LOANS, INC. THE PRENTICE-HALL CORPORATION SYSTEM, INC, REGISTERED AGENT, 1201 HAYES STREET, SUITE 105, TALLAHASSEE, FL 32301**.

I, ERIC L. LARSON, do hereby affirm that on the **29th day of August, 2007** at **2:00 pm, I:**

served a **REGISTERED AGENT** by delivering a true copy of the **Summons and Complaint** with the date and hour of service endorsed thereon by me, to: **GWEN BUTLER** as **CLERK FOR REGISTERED AGENT** at the address of: **1201 HAYES STREET, SUITE 105, TALLAHASSEE, FL 32301** on behalf of **COUNTRYWIDE HOME LOANS, INC.**, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. I also certify that the above stated facts are correct to the best of my knowledge. I declare that I have read the forgoing Verified return of Service and the facts stated in it are true.  Pursuant to F.S. 92.525(2), Notary not required. Date: _X - 29_ -2007

**ERIC L. LARSON**
CPS #063, 2ND JUDICIAL CIRCUIT

**CAPLAN AND CAPLAN PROCESS SERVICE**
**172 W. Flagler St**
**Miami, FL 33130**
**(800) 368-7762**

Our Job Serial Number: 2007000464
Ref: 14076A

Copyright © 1992-2006 Database Services, Inc. - Process Server's Toolbox V6.1c

# EXHIBIT B

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FL

**NORMAN GOLAUB** and
**UNA GOLAUB,**

CASE NO: 07 020888

Plaintiffs,

v.

**COUNTRYWIDE HOME LOANS, INC.,**
etc.,

Defendant.

_____/

## NOTICE OF FILING DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

PLEASE TAKE NOTICE that defendant Countrywide Home Loans, Inc. has, this 26th day of September, 2007, filed in the United States District Court for the Southern District of Florida, Fort Lauderdale Division, *Defendant's Notice of Removal* of this cause, pending in the Circuit Court, in and for Broward County, Florida, and has served a copy of said removal notice on counsel for plaintiffs this same date. This case has now been removed to federal court. A copy of said notice of removal (with exhibits) is attached as **EXHIBIT A.**

Respectfully submitted,

William P. Heller, Florida Bar No. 987263
e-mail: william.heller@akerman.com
Kimberly A. Leary, Florida Bar No. 0596051
e-mail: kimberly.leary@akerman.com
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301
954-759-8945(ph)/954-463-2224 (fax)

and

{FT426157;1}

Jeffrey A. Trinz, Florida Bar No. 0265683
e-mail: jeffrey.trinz@akerman.com
**AKERMAN SENTERFITT**
One Southeast Third Avenue, 25th Floor
Miami, Florida  33131-1714
305-374-5600(ph)/305-374-5095(fax)
*Counsel for Countrywide Home Loans, Inc.*

## CERTIFICATE OF SERVICE

*I hereby certify* that a true copy of the foregoing has been furnished by **U.S. mail** to

James S. Caris, Esq., 401 East Las Olas Blvd., #130-117, Fort Lauderdale, Florida 33301, this

26th day of September 2007.

Kimberly A. Deary

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

NORMAN GOLAUB and
UNA GOLAUB,

      Plaintiffs,

vs.

                                          CASE NO.:

COUNTRYWIDE HOME LOANS, INC.,

      Defendant.

_____/

## AFFIDAVIT OF JAVIER JARABA

I, Javier Jaraba, being duly sworn, state under oath:

1.    My name is Javier Jaraba. I am over the age of 21 and am competent to make this affidavit. Further, I understand the importance of providing truthful testimony and understand the consequences of failing to provide truthful testimony.

2.    I am Senior Vice President, Risk Management for Full Spectrum Lending, a division of Countrywide Home Loans, Inc., which I shall abbreviate as "Countrywide." I have held this position at all times material to this affidavit. In this capacity, I have personal knowledge of Countrywide's business and legal affairs, specifically including the matters set forth in this affidavit. I am authorized to execute this affidavit in this matter.

3.    Countrywide is a corporation organized under the laws of the State of New York, and Countrywide has its principal place of business located in Calabasas, California.

4.    I am familiar with Countrywide's records concerning the mortgage executed by the plaintiffs in this lawsuit. Countrywide is currently the mortgage servicer for said loan. A copy of the subject mortgage is attached to the plaintiffs' complaint in this lawsuit.

5.  I have reviewed the complaint and understand the plaintiffs in this lawsuit ask for damages as well as a judgment rescinding their current mortgage loan.  In other words, plaintiffs ask for money damages **and** that their mortgage debt be cancelled.

6.  The subject mortgage loan, a copy of which is attached to the plaintiffs' complaint, was for the original amount of $289,000.  The HUD-1 settlement statement for the closing of this mortgage confirms this.  Countrywide's records pertaining to this mortgage loan show that its principal balance is presently in excess of $280,000.

7.  The minimum monetary value of the equitable relief sought by the plaintiffs in this case (i.e., the cancellation of the plaintiffs' mortgage) that would flow to the plaintiffs if the relief were granted is the estimated present principal balance of the loan, or an amount presently exceeding $280,000.

Further affiant sayeth not.

This, the _25_ day of September, 2007.

_Javier Jaraba_
Javier Jaraba

STATE OF CALIFORNIA            §
                               §
COUNTY OF LOS ANGELES          §

The foregoing instrument was sworn to and subscribed before me this _25_ day of September 2007, by _JAVIER JARABA_, who

☐   is personally known to me; or

☑   has produced _California Drivers Lic._ as identification.

_Notelesg_
Notary Public
Print Name: Gilda Shanlian
My Commission Expires: May 4, 2011

GILDA SHANLIAN
Commission # 1743402
Notary Public - California
Los Angeles County
My Comm. Expires May 4, 2011

2

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

Norman Golaub and Una Golaub

CIV - COOKE

**DEFENDANTS**

Countrywide Home Loans, Inc.

MAGISTRATE JUDGE
BROWN

**(b)** County of Residence of First Listed Plaintiff   Broward County, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Los Angeles County, CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

James S. Caris, Esq., 401 E. Las Olas Blvd., Ste 130-117, Fort Lauderdale, FL 33301, (954) 920-9526

07-61378

Attorneys (If Known)

William P. Heller, Esq., Akerman Senterfitt, 350 E. Las Olas Blvd., Ste 1600, Ft. Lauderdale, FL 33301 (954) 759-8954

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☑ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

0:07CV 61378 - Cooke-Brown

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☑ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

FILED by ___
INTAKE
SEP 26 2007
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. LAUD.

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☑ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):
a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☐ YES ☐ NO
JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

USC 1332 and 1441(b). Alleged breach of contract, fraud in the inducement, fraudulent misrepresentation and recission.

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD
_Kimberly C. L___

DATE   9/26/07

FOR OFFICE USE ONLY

AMOUNT _____   RECEIPT # _____   IFP _____

541095